IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| CHRISTINA PAOLI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-66-GMS-CJB |
| | ) | |
| TROOPER STETSER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# MEMORANDUM ORDER

## I. INTRODUCTION

Pending before the court are Magistrate Judge Burke's Report and Recommendations ("the R&R"), dated July 11, 2014 (D.I. 72), and the Objections filed by defendants Trooper Ashley Stetser, Corporal Kimberly Layfield, Trooper Joshua Rowley, Corporal Troy Ralston, Corporal Carlisle, Trooper James O'Neil, Corporal Matthew Warrington, Sergeant John Barnett, Sergeant Michael Whaley, Lieutenant Kenneth Hardy, Captain Glen Dixon, and Delaware State Police Troop 7 (collectively, "the Defendants"), on July 28, 2014.[1] (D.I. 73.) For the reasons below, the

---

[1] Plaintiff Christina Daum (previously Christina Paoli ("Paoli")) filed a document titled "Plaintiff's Answer to Defendant's Motion for Summary Judgment" on August 15, 2014. (D.I. 74.) The court is uncertain for what purpose Paoli submits this briefing, but, in any event, Paoli's submission is untimely. The majority of the brief appears to be objections to the R&R. The deadline for objections to the R&R was July 28, 2014. To the extent that the brief is a response to the Defendants' Objections, the deadline was August 14, 2014, pursuant to Rule 6(d) of the Federal Rules of Civil Procedure. The court recognizes that Paoli is proceeding *pro se*, thus entitling her to leniency in certain matters. *See Thompson v. Target Stores*, 501 F. Supp. 2d 601, 603–04 (D. Del. 2007). Nonetheless, she is still obligated to follow the procedural and substantive rules that govern litigation in federal court. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse the mistakes of those who proceed without counsel."); *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980) ("[E]xperience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) ("At the end of the day, [*pro se* litigants] cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.").

Paoli argues that her brief was not untimely because she did not receive any mail until August 4, 2014. (D.I. 74 at 27–28.) This is not a sufficient justification. The R&R was mailed to Paoli's address of record on July 11, 2014. Paoli has frequently changed her mailing address during the pendency of this lawsuit without expressly notifying the

court will sustain the Defendants' Objections, and adopt the remaining unchallenged portions of the R&R (D.I. 72.) Thus, the court grants the Defendants' motion for summary judgment in full. (D.I. 52.)

## II. DEFENDANTS' OBJECTIONS

In the R&R, Magistrate Judge Burke recommended that the court grant the Defendants' motion for summary judgment as to all Defendants except Trooper Joshua Rowley ("Rowley"). (D.I. 72 at 44–49.) The Defendants' contend that Magistrate Judge Burke erred and that summary judgment is proper with respect to Rowley. (D.I. 73.) The Defendants do not object to the remainder of the R&R.

Specifically, the Defendants argue that Magistrate Judge Burke failed to credit information possessed by Rowley that did not conflict with Paoli's version of events. The Defendants contend that the undisputed facts show that Rowley received a call from dispatch indicating that Paoli was located in the north parking lot. The Defendants argue that Magistrate Judge Burke improperly discounted this information because of a non-material discrepancy in the parties' testimony concerning when Paoli placed a call from her phone. Moreover, the Defendants argue there was no justification for Magistrate Judge Burke discrediting Rowley's sworn testimony that he could hear movement from within the mobile home. The Defendant's maintain that Rowley "had reason to believe" that Paoli was inside the mobile home, or he, at worst, made a reasonable mistake as to the existence of probable cause. *See Payton v. New York*, 445 U.S. 573, 603 (1980). Thus, the Defendants argue, there was no constitutional violation.

In the alternative, the Defendants argue that Rowley was entitled to qualified immunity. Magistrate Judge Burke did not address the Defendants' arguments on qualified immunity because

---

Defendants or the court, despite several orders from Magistrate Judge Burke instructing Paoli to do so. (D.I. 30; D.I. 70; D.I. 76.) The court does not consider Paoli's submission.

it was not properly raised before him. (D.I. 72 at 47 n.27.) The Defendants' argue that consideration of Rowley's qualified immunity defense at this stage is not improper and supports summary judgment.

## III. STANDARD OF REVIEW

The magistrate judge filed his Report and Recommendation pursuant to Rule 72(b)(1) of the Federal Rules of Civil Procedure; the pending objections, therefore, are dispositive and the court's review is *de novo*. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3). The court may accept, reject, or modify the recommendations of the magistrate judge. Fed. R. Civ. P. 72(b)(3). The court also may receive further evidence or return the matter to the magistrate judge with instructions for proceedings. *Id.*

## IV. DISCUSSION

After having reviewed the record in this case, the R&R, the parties' submissions, and the applicable law, the court finds that the magistrate judge committed legal error in reaching his determination that summary judgment as to defendant Rowley was not appropriate. As to the remainder of the R&R, the court agrees with and affirms the magistrate judge's recommendation that summary judgment be granted for the other Defendants.

### A. Rowley: March 7, 2011, Arrest

In the R&R, the magistrate judge found that the record did not support Rowley's contention that he possessed "reason to believe" that Paoli was located within the mobile home when he entered the vehicle to execute the arrest warrant. (D.I. 73 at 3–5.) In *Payton*, the Supreme Court announced: "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton*, 445 U.S. at 603. As explained by

Magistrate Judge Burke in the R&R:

> [A]n arrest warrant supported by probable cause had been issued with respect to the March 7, 2011 arrest, and Defendant Rowley was acting pursuant to that warrant when he entered Plaintiff's motor home without a search warrant. Thus, resolution of this claim turns on whether Defendant Rowley was permitted to do so under the circumstances.

(D.I. 72 at 44.)

There has been disagreement amongst the circuits as to the meaning of "reason to believe," as stated in *Payton*, specifically whether it announces a probable cause standard or something less demanding. *United States v. Veal*, 453 F.3d 164, 167 n.3 (3d Cir. 2006) ("*Payton* is not explicit . . . about whether courts should apply a 'probable cause' or 'reasonable belief' standard to the question of whether a suspect is in the residence, or whether there is a difference between the two."). The magistrate judge noted that the Third Circuit has not yet definitively weighed in on this question, *see Williams v. City of Phila.*, 454 F. App'x 96, 98 n.2 (3d Cir. 2011); *Veal*, 453 F.3d at 167 n.3, but ultimately applied the traditional probable cause standard and determined that the Defendants had failed to establish (on the current record) that Rowley possessed probable cause to believe that Paoli was inside the mobile home when he entered. Thus, the magistrate judge recommended that summary judgment be denied as to Rowley.[2]

The court finds that under either standard, the Defendants have shown that Rowley possessed a sufficient quantum of evidence to give a reasonable person reason to believe that Paoli was within the mobile home. First, Rowley asserts that the police dispatcher had indicated that a call from Paoli had been traced to the north parking lot, where the mobile home was in fact parked. Both parties acknowledge that Paoli made a call to police dispatch. What is disputed is when the

---

[2] The magistrate judge's decision was informed by a district court decision from the Western District of Pennsylvania, which found the rule announced in *Payton* "is properly understood as a reflection of the 'probable cause standard.'" *See Adams v. Springmeyer*, No. 11-790, 2014 WL 1785341, at *11 (W.D. Pa. May 5, 2014).

phone call took place and how long it took for the police to arrive. Paoli argues that twenty-five minutes elapsed between her call and when the police showed up. The magistrate judge thus found that Paoli's testimony "paints a contradictory factual picture," (D.I. 72 at 46–48). The court, however, does not find this factual dispute to be material.[3] The facts show that dispatch instructed Rowley to search the north parking lot, where the mobile home was parked. The police "had set up a perimeter on the property," (D.I. 54 at A-34), thus whether or not Paoli was *contemporaneously* on the phone in the area is not critical to Rowley's reasonable belief that Paoli was within the mobile home.

Second, although it agrees that there is a genuine dispute over whether the windows and doors to the mobile home were closed and whether Rowley could see in, the court finds that the magistrate judge incorrectly discredited Rowley's uncontroverted testimony that he could hear movement coming from inside. The magistrate judge stated: "[T]his set of facts (as to all windows and doors of the motor home being closed and locked), if believed, would also make it more difficult for Defendant Rowley to have heard any movement inside the motor home." While it is true that the court should draw all reasonable inferences in favor of the non-moving party at the summary judgment stage, the court finds that this was not a reasonable inference for the magistrate judge to make, in the absence of any evidence (or even any argument from Paoli) to the contrary.

Thus the record shows that Rowley responded to the north parking lot, the location from which Paoli had made a recent phone call to police. There, Rowley heard movement coming from a parked mobile home. Putting aside whether Rowley actually saw Paoli inside, the court finds

---

[3] The court is also not convinced that the factual disagreement is as readily apparent as the magistrate judge made it out to be. Rowley indicated that dispatch was on the phone with Paoli about fifteen to twenty minutes after she fled from the apartment complex. Paoli indicated that the police did not enter her home until twenty-five minutes after the phone call to dispatch. Thus, Rowley and Paoli are speaking to separate time frames. Rowley did not indicate how much time elapsed after speaking to dispatch before he entered the mobile home. (D.I. 54 at A-34.)

5

that Rowley possessed sufficient evidence to give him reason to believe that Paoli was inside the mobile home, even under the more exacting probable cause standard. *See Solis-Alarcon v. United States*, 662 F.3d 577 (1st Cir. 2011) ("[E]ven with the more demanding 'probable cause' test . . . the reasonableness inquiry here is whether [reasonably prudent] agents could reasonably believe that [defendant] lived at the house (and so would likely be present there in the morning)." (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964))). Thus there was no constitutional violation, and summary judgment is appropriate.[4]

Although it finds no constitutional violation, the court will also address the Defendants' argument that Rowley is entitled to qualified immunity from suit. The magistrate judge did not reach this question because the Defendants did not assert the defense at the time: "Defendant Rowley did not raise a qualified immunity defense with respect to this claim. Therefore, the Court does not analyze whether Defendant Rowley is entitled to qualified immunity for the claim." (D.I. 72 at 47 n.27.) In their Objections, however, the Defendants contend that a qualified immunity defense may be raised at any time. The court agrees. *See Sharp v. Johnson*, 669 F.3d 144, 158 (3d Cir. 2012) ("Qualified immunity is an affirmative defense and generally must be included in a responsive pleading or may be considered waived. Although it is true that parties should generally assert affirmative defenses early in the litigation, there is no firm rule. Thus, affirmative defenses may be raised at any time, even after trial, so long as the plaintiff suffers no prejudice.") The court finds that Paoli would not be prejudiced by the court's decision to entertain the Rowley's qualified immunity defense at this stage. Qualified immunity was previously submitted as a defense to several claims against other Defendants, and Paoli has never once addressed the merits of the

---

[4] The magistrate judge found that the "sparse record" was a factor in his decision to deny summary judgment. (D.I. 72 at 48–49.) While a factually richer record certainly would have aided the court in evaluating Rowley's "reason to believe," the court finds that the facts in the record were sufficient.

6

defense.[5] In addition, the court finds it unnecessary and inefficient to recommit the matter to Magistrate Judge Burke to decide the question when the court already has sufficient information. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001) (explaining that timely rulings on questions of qualified immunity help avoid "costs and expenses" of litigation); *Curry v. Best*, No. 08-11476-BC, 2008 WL 2950107, at *3 (E.D. Mich. July 31, 2008) (ruling on defendant's qualified immunity defense, even though it was not previously considered by the magistrate judge).

"The general rule of qualified immunity is intended to provide government officials with the ability 'reasonably [to] anticipate when their conduct may give rise to liability for damages.'" *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (alteration in original) (quoting *Davis v. Scherer*, 468 U.S. 183 (1984)). The Supreme Court has provided a two-prong approach for evaluating qualified immunity claims: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier*, 533 U.S. at 201). The court may decide the question of whether there was a "clearly established right" without first determining if a violation occurred. *See id.* at 236. "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Id.* at 232 (citing *Anderson*, 483 U.S. at 640.)

The court finds that Paoli's asserted constitutional right—Fourth Amendment right to be free from unreasonable searches and seizures—was not clearly established in this case. Although there is no requirement that there be a "case directly on point" for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."

---

[5] The Defendants first asserted the qualified immunity defense in its summary judgment briefing. (D.I. 53.) Paoli did not address the merits in her brief in opposition. (D.I. 65.) Furthermore, although it is not properly before the court, Paoli's most recent briefing also does not address qualified immunity. (D.I. 74); *see supra* note 1.

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). As described above, the Third Circuit has never squarely interpreted the import of the "reason to believe" standard outlined in *Payton*. *See Veal*, 453 F.3d at 167 n.3 (discussing *Payton*, 445 U.S. at 603). It is unclear, even to the judiciary, how much evidence an officer must possess before entering a defendant's property to execute an arrest warrant. Indeed, Magistrate Judge Burke acknowledged that "[i]t is not entirely clear" how to interpret *Payton*. (D.I. 72 at 45.) The court finds that Rowley could not have violated a clearly established right on March 7, 2011, when the law remains unsettled even still.

Moreover, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (internal quotation marks omitted). Assuming a violation did occur, the court finds no evidence to suggest that Rowley was "plainly incompetent" or knowingly violating the law. There was a valid arrest warrant for Paoli's arrest. Rowley followed the instructions offered by dispatch and his superior officers in responding to the north parking lot and ultimately entering the mobile home to apprehend Paoli. The magistrate judge commented that "[t]he issue is a close one." (D.I. 72 at 47.) The court finds that Rowley's actions were a reasonable exercise of judgment, within the "breathing room" provided for government officials. *See Stanton*, 134 S. Ct. at 5.

The court finds that Rowley did not commit a constitutional violation when he entered Paoli's motor home to execute the arrest warrant. Alternatively, the court finds that Rowley is entitled to qualified immunity, as the right at issue was not clearly established. The court disagrees with the magistrate judge's recommendation that summary judgment be denied, and grants summary judgment as to claim against defendant Rowley for the March 7, 2011, incident.

B. **Remaining Claims**

Magistrate Judge Burke recommended that the court grant summary judgment as to all of the remaining claims against the Defendants (including the additional claim against Rowley for events that took place on July 21, 2011). There are no objections properly before the court concerning the balance of the R&R. The court adopts the remaining recommendations put forth in the R&R.

## V. CONCLUSION

Therefore, IT IS HEREBY ORDERED that:

1. The Defendants' Objections to the Report and Recommendation (D.I. 73) are SUSTAINED;

2. The Report and Recommendation, dated July 11, 2014, (D.I. 11) is ADOPTED IN PART and REJECTED IN PART;

3. The Defendants' Motion for Summary Judgment (D.I. 52) is GRANTED;

4. The Clerk of the Court is instructed to close this case.

Dated: November 10, 2014

_____
UNITED STATES DISTRICT JUDGE

9